Bruce S. Campbell v. Commissioner.
Bruce S. Campbell v. Commissioner
Docket No. 21149.
United States Tax Court
1950 Tax Ct. Memo LEXIS 193; 9 T.C.M. (CCH) 410; T.C.M. (RIA) 50127; May 26, 1950
*193 Joshua W. Miles, Esq., 1607 First Nat'l Bank Bldg., Baltimore, Md., for the petitioner. Sanford M. Stoddard, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency of $12,838.89 in the petitioner's income tax for 1943. The issues presented by the pleadings are the correctness of the respondent's action: (1) In including in petitioner's taxable income the amount of $14,513.06 as representing the race winnings in 1943, subsequent to August 9, of a horse named Barbara Childs, and (2) in disallowing a deduction of $974.19 taken for repairs to farm property and treating the amount as a capital expenditure. At the hearing the petitioner conceded the correctness of the respondent's action as to issue (2). Findings of Fact Such of the facts as were stipulated are found accordingly. The petitioner resides at Lutherville, Baltimore County, Maryland, and has his principal place of business at Towson in the same County and State. Virginia Campbell is the wife of the petitioner and resides with him at Lutherville. For 1943 petitioner and his wife filed their separate income tax returns with the collector *194 at Baltimore, Maryland. The petitioner's principal business activity in 1943 was as president of Harry T. Campbell Sons Corporation, Towson, Maryland, which was engaged in the contracting business. Since about 1940 or 1941 the petitioner has owned and operated a racing stable in his individual name and throughout this time John B. Hatfield has been his trainer. In the early part of 1943 the petitioner's stable consisted of two horses, Patchpocket and First Girl, both of which the petitioner raced in that year. In the spring of 1943 the petitioner and Mrs. Campbell had two sons overseas and another who was preparing to go. During that spring petitioner talked with Mrs. Campbell a number of times about claiming a horse for her so as to provide her with a new interest and to keep her busy. On those occasions no specific horse was selected or decided upon. Mrs. Campbell had never had a racing stable, had never owned any racing horses and had had no experience in racing. At that time and prior thereto she had no separate income of her own and although she had a separate bank account all the money deposited therein was given to her by the petitioner. An owner conducting a racing *195 stable and doing business at any of the tracks located in the State of Maryland during the entire year 1943, or any part thereof, was subject to the Rules of Racing adopted by the Maryland Racing Commission. Rule 14 (f) of said rules defines a claiming race as "one in which, according to the conditions, all the horses engaged may be claimed." The rules further provide: "Claiming Races "50. In claiming races any horse is subject to claim for its entered price by anyone registered in good faith for racing at that meeting and also starting a horse at that meeting, or by his authorized agent, and this right to claim includes the initial race in which the owner starts his horse. "The following limitations apply: * * *
"(e) If a horse is claimed, he shall not start in a claiming race for a period of thirty (30) clear days from date of claim (the day of the claim and the thirtieth day from the day of the claim shall not be counted) for less than 25% more than amount for which he was claimed. "(f) Any horse so claimed shall not be sold or transferred, and no interest in such horse shall be sold or transferred to anyone for thirty (30) clear days thereafter, except in another *196 claiming race, nor shall it remain in the same barn or under the control or management of its former owner for a like period, unless reclaimed. * * *
"52. The Stewards may, at any time, in their discretion, require any person making a claim for a horse in any claiming race, to make affidavit in writing that he is claiming said horse for his own account or an authorized agent and not for any other person. Any person making such affidavit wilfully and falsely shall be subject to punishment in the same manner as is hereinafter provided for the punishment of other persons violating any of the terms of this rule. "53. * * * "(a) No person shall offer, or enter into an agreement, to claim * * * any horse in a claiming race; * * *
"58. Any person violating any of the provisions of the claiming rules shall be subject to disclipline by the Stewards, who may, in their discretion, punish the person so offending by fine or suspension, or by excluding such person from all places under control for the remainder of the meeting, and such Stewards shall in every case report their action to the Maryland Racing Commission, which may, in its discretion, exclude such person either temporarily *197 or permanently from all race meetings under its jurisdiction." In the first part of 1943 the petitioner's trainer, Hatfield, informed the petitioner of his opinion that the two horses then owned by petitioner were not suitable for racing on mile tracks. Petitioner thought that if they did not win on mile tracks they could be sent to half-mile tracks. However, after a couple of races at Pimlico Race Track, Baltimore, Maryland, Hatfield informed the petitioner that his two horses were "no good" and suggested that the petitioner claim a horse that would win races. Although expressing an aversion to claiming horses, the petitioner claimed a horse, Bayborough, in a race held several days prior to April 28, 1943. On April 28, 1943, the petitioner entered Bayborough in a claiming race at Pimlico and her former owner claimed her. Mrs. Merrall MacNeille entered her horse, Barbara Childs, sometimes herein referred to as Barbara, in the same race at a claiming price of $2,500. Her horse finished first and won $1,000. Hatfield had urged petitioner to claim Barbara Childs at this race but petitioner informed him that $2,500 was too much money for him to put into a horse. Mrs. MacNeille entered *198 Barbara Childs in a claiming race at Pimlico on Friday, May 7, 1943, at a claiming price of $3,250. Hatfield again urged petitioner to claim her but petitioner contended that $3,250 was too much money. Hatfield talked with Mrs. Campbell about the matter and "worked on her" and "she worked on" petitioner so that the petitioner entered a claim for Barbara and acquired her for $3,250. In this race Barbara finished fourth and won only $50. Barbara was a well-bred animal and from May 7, 1943 until her retirement from the track in 1944 never again ran in a claiming race. Not being the owner of a horse entered at the meet at which Barbara ran on May 7, 1943, Mrs. Campbell was not eligible, under the rules of the Maryland Racing Commission, to claim her. The petitioner entered his claim for Barbara pursuant to an agreement with Mrs. Campbell that after the time, during which the transfer of a claimed horse was prohibited by the racing rules, had expired he would transfer Barbara to her for $3,250, the price at which he was claiming her. From May 7 until August 9, 1943, Barbara was owned by petitioner and raced under his name at Suffolk Downs, Boston, Massachusetts. The following is a statement *199 of the dates between May 7, 1943 and August 9, 1943 on which Barbara raced, places finished and amounts won: Amounts
Date
Finished
won
May 26
Second
$ 300
June 1
Second
350
June 5
First
1,350
June 9
First
1,200
June 25
Fifth
July 3
Eighth
July 22
Second
400
August 7
First
3,250
Total
$6,850
The foregoing races were either allowance or handicap races. Both allowance races and handicap races are higher classes of races than claiming races. On August 9, 1943, the Monday following the Saturday (August 7) on which Barbara won the handicap race with a purse of $3,250, the petitioner executed a bill of sale to Mrs. Campbell. The instrument recited the sale of Barbara to Mrs. Campbell for $3,250, the terms of payment being a cash down payment of $100, and the balance of $3,150 to be paid "from and out of any and all winnings that the said mare Barbara Childs shall be entitled to without any decrease or deduction whatsoever from said winnings." The instrument, which was recorded in the public records of Baltimore County, contained no provision specifically requiring that Barbara should be raced. In addition to issuing to petitioner her *200 check dated August 9, 1943 for $100 in connection with the transaction, Mrs. Campbell also issued to him her check dated September 14, 1943 for $3,150. After August 9, 1943, Barbara was run in the name of Mrs. Campbell who received all of Barbara's winnings and used them for her own purposes. In connection with the racing of Barbara, Mrs. Campbell was required to take out an owner's license at the New York Jockey Club which she still has. The following is a statement of the dates on which Barbara ran during the remainder of 1943, the tracks, races, places finished and amounts won: Amount
Date
Track
Race
Finished
Won
August 27
Narragansett Park
What Cheer Purse
First
$ 1,075
September 4
Narragansett Park
Mary Dyer Handicap
First
3,770
September 11
Garden State Park
Vineland Handicap
First
10,000
September 18
Aqueduct
Beldame Handicap
Fourth
1,250
October 5
Belmont
Ladies Handicap
Seventh
October 23
Pimlico
Washington Handicap
Sixth
October 29
Pimlico
Queen Isabella Handicap
Second
1,500
November 5
Pimlico
Lady Baltimore Handicap
Second
1,000
November 11
Rockingham Park
Armistice Day Handicap
First
3,250
November 25
Rockingham Park
Tom Thorp Handicap
Sixth
November 27
Rockingham Park
Rockingham Park Purse
Third
250
Total
$22,095
*201 The Beldame Handicap at the Aqueduct Track is the best race on the East Coast for fillies and mares. The Mary Dyer Handicap at Narragansett Park attracts the better fillies and mares in New England. After Barbara's effort in the Beldame Handicap, an offer of $50,000 was made for her purchase by a Mr. Bosley. Barbara was in the custody of Hatfield on August 9, 1943, and continued in his custody thereafter. In 1943 Hatfield operated what is known as a "public racing stable." He trained for four or five other owners besides the petitioner and in addition trained his own horses which he raced in his wife's name. He was assigned a certain stable area at the track for the horses trained by him. He continued to be Barbara's trainer and she was quartered along with the other horses trained by him, in the stable area assigned to him. When she was moved from one track to another she was moved in the same van with horses of Hatfield and the petitioner. After August 9, 1943, Mrs. Campbell paid all of Barbara's expenses, including those for upkeep, care, training, moving and insurance. The racing colors adopted by Mrs. Campbell were the same as those of the petitioner. The only distinguishing *202 feature was in the design and arrangement of the colors on the jockeys' caps. Petitioner went with Mrs. Campbell to Barbara's races of importance subsequent to August 9, 1943. After August 9, 1943 the petitioner was consulted by Mrs. Campbell and Hatfield on all questions relating to the racing activities of Barbara. However, the final decisions were made by Mrs. Campbell and Hatfield. Subsequent to August, 1943, Mrs. Campbell bought several other horses, at least one of which proved to be bad. However, so far as shown Mrs. Campbell's racing establishment in 1943 consisted only of Barbara. Due to an accident sustained while training in the spring of 1944, Barbara was retired in that year from racing and devoted to breeding purposes. This change was decided upon by Mrs. Campbell after discussing the matter with petitioner and Hatfield. The offsprings of Barbara were registered in Mrs. Campbell's name. Two of the colts were trained by Hatfield for racing. One of them was claimed in a claiming race for $5,000. The other is still owned by Mrs. Campbell. Mrs. Campbell also sold a yearling from Barbara. The proceeds from the sale of the colt and the yearling were received by Mrs. Campbell. *203 At the time of the hearing Mrs. Campbell still owned Barbara who was in Kentucky for breeding purposes. Aside from the maintenance of a separate banking account in which she deposited the proceeds of purses won by Barbara and from which sums were withdrawn for the payment of expenses incurred in connection with Barbara, Mrs. Campbell maintained no books or records. In his 1943 income tax return the petitioner reported as income received as purses won by race horses $10,380 which included the $6,850 won by Barbara from May 7 to August 9, 1943. He claimed the following amounts as deductions for race horse expenses: Jockey mounts
$ 910.10
Trainer's expenses
6,391.45
Feeding
238.00
Van service
234.00
Veterinary
124.50
Jockey stake
325.00
Miscellaneous supplies and expenses
43.75
Total
$8,266.80
In her separate income tax return Mrs. Campbell reported gross income of $22,465 which included the $22,095 won by Barbara in 1943 subsequent to August 9. She reported a net income of $14,513.06 after deduction of the following items and amounts as race horse expenses: Insurance
$ 201.76
Horse shoes
15.00
Blouse for jockey
11.50
Stake nominations and starting fees
1,410.00
Trainer payments
3,864.18
Jockey payments
2,150.70
Horse breeders protective association
20.00
Depreciation
278.80
Total
$7,951.94
*204 In no year since the petitioner has had a racing stable has the operation of the stable resulted in anything that even approximated a profit except the year 1943. For no year except 1943 has Mrs. Campbell ever filed a separate income tax return. For all other years a joint return was filed by her and the petitioner. In determining the deficiency in controversy the respondent determined that the net income of $14,513.06 reported by Mrs. Campbell was taxable to the petitioner and included that amount in his taxable income. Mrs. Campbell became the actual owner of Barbara Childs on August 9, 1943. Opinion Concededly the petitioner acquired Barbara Childs in a claiming race on May 7, 1943 for $3,250 and there is no contention that he did not continue to be the owner of her until August 9, 1943. The disagreement between the parties is as to whether Mrs. Campbell became the actual bona fide owner of Barbara on or about August 9, 1943 when the petitioner executed a bill of sale to Mrs. Campbell for her and Mrs. Campbell made the initial payment to petitioner. The respondent attacks the petitioner's action in claiming Barbara for Mrs. Campbell under an agreement later to transfer *205 her to Mrs. Campbell at the claiming price of $3,250 as being in violation of the racing rules of the Maryland Racing Commission. Likewise he is critical of the petitioner's failure to transfer Barbara to Mrs. Campbell immediately upon the expiration of the period during which her transfer was prohibited under the racing rules and delaying the transfer until after Barbara had demonstrated that she could win races. The respondent also questions the terms of the transaction under which Mrs. Campbell paid only $100 down and was liable for the balance only in case Barbara's winnings should be sufficient for that purpose. Respecting the petitioner's action in claiming Barbara under an agreement to transfer her to Mrs. Campbell later at the claiming price, Humphrey Finney, a witness for the petitioner, secretary of the Maryland Horse Breeders' Association, manager of the Racing and Breeding Association, editor of The Maryland Horse and conversant with racing practices in Maryland, expressed the opinion that such action was a technical violation of the racing rules. However, he stated that it was something which is repeatedly done and is condoned where the one claiming the horse does not *206 transfer it to others during the period within which the rules prohibit a transfer. He also stated that there was ample precedent for petitioner's action in claiming Barbara for Mrs. Campbell. The petitioner stated that until the time of the hearing in this proceeding his impression was that the rules prohibited a transfer before the expiration of 60 days following acquisition. He thought the reason why transfer was not made immediately upon the expiration of the 60 days following acquisition was that Barbara was up in New England and was doing right well in winnings and the matter just dragged on. Barbara raced at Suffolk Downs from May 27, 1943 to August 7, 1943 and at Narragansett Park beginning on August 27, 1943. Hatfield testified that about the middle of the meet at Suffolk Downs the petitioner and Mrs. Campbell came up to see Barbara race and at that time wanted to transfer Barbara into Mrs. Campbell's name but decided not to do so upon his request that they wait until Barbara was moved over to the next meet at another place. While the testimony shows that it is rare for a horse with a record of winnings such as Barbara had on August 9, 1943 to be sold for a nominal or *207 small down payment with the remainder of the purchase price to be paid out of its winnings, it also shows that it is done occasionally where owners are attempting to interest friends in, or are assisting them in getting started in, racing. After a careful consideration of all the evidence, including that relating to Mrs. Campbell's dealings with respect to Barbara and other horses subsequent to August 9, 1943, it is our opinion that when the petitioner executed the bill of sale on August 9, 1943 it was the intention of the petitioner and Mrs. Campbell that the ownership of Barbara Childs should thereupon pass to Mrs. Campbell. Accordingly, we have found as a fact that Mrs. Campbell became the actual owner on that date. Consequently from and after that date the winnings of Barbara Childs were the income of Mrs. Campbell. Decision will be entered under Rule 50.